In the Matter of the Estate of MARCELL PELIS, Deceased.

Surrogate's Court, Suffolk County, April 2, 1934.

*Saxtien & Scheinberg,* for the petitioner.

*Alexander C. Webber,* for the State Tax Commission.

PELLETREAU, S.  Marcell Pelis died a resident of Suffolk county on October 18, 1933, and his will has been probated and is referred to.  He left surviving him a widow and fifteen children.  The Pelis family are Polish farmers, hard workers, and good stock.

According to the papers, the net estate amounts to about $42,000. The widow claims an exemption of $20,000, and the bequest to the daughter Antoinette Pelis of $100 by paragraph third of the will is also claimed to be exempt.

At the time of the decedent's death there was a joint account

in the Southhold Savings Bank in the names of Marcell Pelis and Stephanie Pelis in the sum of $8,616.10.

There are two points for the consideration of the court: One is whether under the terms of the will there are any exemptions outside of an exemption of the present value of the wife's life estate. The second point is whether or not a certain savings account of $8,616.10 in the Southold Savings Bank in the names of the decedent and his wife, and a certain piece of real property, referred to in the papers herein as parcel 3, owned by the decedent and his wife as tenants by the entirety, shall be included in the gross estate at their full value or at one-half thereof.

My sympathy is with the family, but I believe that cold, hard, inexorable thing called " the law " is contra. The taxing of estates by the entirety came into our law by chapter 323 of the Laws of 1916, and has so continued to prevent loss of taxes to the State by placing titles in name of husband and wife, the survivor being sole owner, the deceased owning nothing. Up to 1916 as survivor owned all and deceased nothing there could be no tax. But *title* and *tax* are two different things. Title means full, independent and fee ownership. This is still the law and the survivor of husband and wife still has such *title*. But the State may nevertheless impose a *tax* when one of them dies without disturbing the *title* in the survivor. The prior taxing statutes (Laws of 1916, chap. 323, and amendments) read " as if the property was solely owned by the deceased." The present statute (§ 249-r, subds. 5 and 6) continues this tax except as to so much as was contributed by the survivor in the purchase. Our statute was copied from the Internal Revenue Law of 1926, section 302, paragraph [e] (U. S. Code, tit. 26, § 1094, par. [e]), which reads the same. Our Court of Appeals overruled itself in *Matter of Weiden* (263 N. Y. 107), and held entireties taxable, having previously held otherwise in *Matter of Lyon* (233 N. Y. 208). This *Weiden* case was decided November 21, 1933. The Court of Appeals in the *Weiden* case, because New York copied the Federal statute, based its decision entirely on the desire to maintain uniformity, and the Federal rule is to look only at the purchase price of the land and see who contributed to such price and how much. Regulations 70 (1929 ed.) of the Federal Estate Tax under Revenue Act of 1926, as amended in 1928, page 31, refer to purchase price of the tenancy by the entirety as determining whether all or part should be taxed. For example, if a woman had $10,000 of her own, and a man $20,000, and they married and bought a farm for the $30,000 in their joint names, and he died, the farm would be hers, but it would be taxed at $20,000. The law seems to say to the surviving wife, " how much money of your own did you put

in when the farm was purchased? So much we will not tax."
The regulations above cited (p. 31) provide it is all taxable except
so much of the price as was advanced by the survivor at the time
of purchase. So I think *Matter of Weiden* (263 N. Y. 107), following
the Federal rule, overrules in effect *Matter of Smith* (149 Misc. 540).
When the $1,650 farm was bought in both names, Mrs. Pelis put
up no money of her own. It came from a joint bank account
in which she only had the chance of full ownership in case she
survived, and the money in the joint account came from sales *off*
her husband's *other lands* and from work of the *whole family* on
lands *in his name only* up to the time of the purchase of this farm
in their joint names. It must be looked at as of the time the
$1,650 farm was bought; up to that time the whole family worked,
and the money from sales of crops was put in the bank in name of
husband and wife. There was no thought or contract as to wages
or division of the income. A wife is entitled to support, but the
husband is entitled to the services of the wife whether in the kitchen
or field. One cannot measure the wife's salary for working in the
field or doing housework; it is the community of interest which
makes husband and wife one. In Polish families father, mother
and all the children work on the farm from childhood, indoors and
out. The children are brought up to work. The net proceeds from
sales of potatoes and cauliflower go in the bank. What percentage
of the profit each one caused is not susceptible of proof. In any
event there is no earmarked money belonging to the wife which
went into the purchase of the $1,650 farm in their joint names,
which seems to be the Federal rule. (See the regulations above
cited, page 31, where " money " and " purchase price " seem to
be the key.) Conversely, page 30 of the regulations, covering
a case where husband and wife become tenants by the entirety
by an event *other than by purchase*, seems to confirm this view, viz.:
(4) " where the property was acquired by the decedent and his or
her surviving spouse as tenants by the entirety by (1) *gift*, (2) *will*
or (3) *inheritance, then*, but *one-half* of the value of the property
becomes a part of the gross estate." This implies, if it was not
acquired by 1, 2, or 3, it all goes in, and the *same wording as in our
New York act, section 249-r of* Tax Law. In other words, I think
it means all goes in unless you prove how much money the sur-
vivor put in the purchase price of her own funds (which amount
may be deducted) or unless it came to *both* by (1) gift, (2) will or
(3) inheritance (then one-half). If Mrs. Pelis had a *contract* with
her husband or he had paid her wages or had made her a gift and
she had deposited any of these in the joint account it would be
different, but there is no *quantum meruit* between husband and wife.

It is cheaper to marry than to hire a cook. Taking money from the joint savings bank account to buy the farm changes nothing as it only puts the joint interest into land instead of money.

As to the right to deduct $5,000 for each child under section 249-q, subdivision b, the law has not been settled by an appellate decision, but the weight of present authority is against it. (*Contra* to *Matter of Smith*, 149 Misc. 540.) This rule conforms to the Federal regulations, article 47 of regulations. As the decisions to date stand, the weight of authority is not to allow the $5,000 deduction unless the gift to the child is outright.

There is room for argument that in the *Weiden Case* (263 N. Y. 107) and *Matter of Dwyer* (149 Misc. 603, FOLEY, S.) it was conceded that the surviving wife had contributed nothing, while in this case the claim is made that by taking the purchase-price money of the farm from the joint savings bank account she had contributed something because by her labor she had helped to build the joint savings account. But changing the joint savings account as to $1,650, taken therefrom to buy the land in both names, does not change the situation any, but leaves it as if the joint savings account, including the $1,650, was the only question. Furthermore, such joint account is made taxable in full by section 249-r, subdivision 6. That this subdivision must control is shown by the proof that the joint savings account was built up from sales off lands which were *in the husband's name only* up to the time of the purchase of the $1,650 Calverton farm, and as a result also of the labor on *his lands* by the *entire family*. The husband as *sole owner* of such lands owned and had exclusive control of the profits therefrom. The labor of the other members of the family was merely the duty they owed to the one from whom they were receiving support. In event of loss the *husband only* could have been sued for debts incurred in husbandry of the soil. Likewise under section 249-r, subdivision 5, the only exception is " except such part thereof as may be shown to have *originally belonged* to such other person," which is also the wording of the Federal statute (Rev. Act, 1926, § 302, par. [e], U. S. Code, tit. 26, § 1094, par. [e]). Obviously nothing " originally belonged to " Mrs. Pelis, as her husband was sole owner of the realty, and he could deposit the profits resulting from family labor in any form he wished, she doing only her wifely duty, however well.

Therefore, the gross estate for taxation purposes should include the Calverton farm at $1,650, the joint account in savings bank in full, with total exemptions of $20,100.

Decree accordingly.